<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCEL GREEN, *et al.*, <br><br>  Plaintiffs, <br><br> v. <br><br> IRVINGTON POLICE DEPARTMENT, *et al.*, <br><br>  Defendants. | Civil Action No: 19-20239 (SDW) (JRA) <br><br> **OPINION** <br><br> October 3, 2024 |

**WIGENTON**, District Judge.

Before this Court is Irvington Police Department, Detective Brechner Jeannot, Detective Christopher Jenkens,[1] and Detective Mitchell Molina's (collectively "Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 (D.E. 99 ("MSJ")). Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78.  For the reasons stated herein, Defendants' motion for summary judgment is **GRANTED**.

---

[1] Defendants' briefing variously refers to this person as Detective "Jenkens" (D.E. 109 at 1), "Jenkins" (*id.* at 5; D.E. 99-3 at 1), and "Brown" (D.E. 109 at 1).  The Court understands these terms to refer to only one person and will proceed with the spelling in the case's caption.

1

I.     **FACTUAL BACKGROUND**[2]

   A.  **2016 Search and Arrest**

On February 6, 2016, Detectives Jeannot, Jenkens, and Molina searched Marcel Green's (Plaintiff) apartment pursuant to a warrant signed by Judge Sherry Hutchins-Henderson of The Superior Court of New Jersey (Essex County). (Defs.' Statement ¶¶ 12–26; D.E. 99-4 at 11–12.) The detectives found over ninety prescription bottles containing various pills, including Percocet and Xanax. (Defs.' Statement ¶ 26.) During the search, Plaintiff and his daughters, Briana Banks and "SG," were held in the front of the apartment. (*Id.* ¶ 20; D.E. 3 ("Am. Compl.") at 3.)

After the search, Detectives Jeannot and Jenkens consulted with Dr. Rana, who appeared as the prescribing doctor on many of the prescriptions. (Defs.' Statement ¶ 28.) Dr. Rana stated that he had not signed the prescriptions. (*Id.*; D.E. 99-4 at 8.) Plaintiff was arrested and held at the Essex County Correctional Facility until February 13, 2016. (Defs.' Statement ¶ 29.) Plaintiff was then transported to the hospital, where he states he received treatment for mental stress from the events of February 6, 2016. (Pl.'s Statement ¶ 29.) Following a complication with the testing

---

[2] Facts cited in this opinion are drawn primarily from Defendants' Statement of Undisputed Facts (D.E. 99-2 ("Defs.' Statement")) and Plaintiff's Statement of Undisputed Facts (D.E. 104 at 5–11 ("Pl.'s Statement")). The facts in Defendants' Statement are largely undisputed for purposes of summary judgment because Plaintiff has failed to properly contest most of them with relevant alternatives. The first fact offered by Defendants, for example, concerns the initiation of the investigation at Plaintiff's address in January 2016. (Defs.' Statement ¶ 1). In dispute, Plaintiff offers an unresponsive paragraph recounting other events—the filing of his complaint, the February 6, 2016 search of his apartment, and a statement obtained from his doctor in 2018. (Pl.'s Statement ¶ 1.) That paragraph appears sixteen times in Plaintiff's Statement (*id.* ¶¶ 1–11, 26, 28, 32, 36, 43), and is unresponsive to most of the corresponding facts on Defendants' Statement (*see, e.g.*, Defs.' Statement ¶ 4 (describing confidential informant's purchase of Percocet from Plaintiff)). Most of the remaining facts in Plaintiff's Statement are also unresponsive to the corresponding facts offered by Defendants. (*Compare* Defs.' Statement ¶ 37 (describing doctor's statement that he had not prescribed medication to anyone named Alkabeer Johnson), *with* Pl.'s Statement ¶ 37 ("The fact that I shared that bedroom with Ms. Lashawnda Banks, the mother of my kids, raises doubt.").)

Where Plaintiff's Statement is unresponsive, Defendants' Statement may be considered undisputed. *See* Fed. R. Civ. P. 56(e)(2); L. Civ. R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion"); *see also Robinson v. N.J. Mercer Cnty. Vicinage-Family Div.*, 562 F. App'x 145, 147, 149 (3d Cir. 2014). Given Plaintiff's *pro se* status, however, this Court will not deem any fact undisputed to the extent it appears contested by Plaintiff and unsupported in the record. *See Stringer v. Pittsburgh Police*, 408 F. App'x 578, 581 (3d Cir. 2011).

of the pills discovered during the search, all charges against Plaintiff were dismissed without prejudice on April 23, 2018. (Defs.' Statement ¶¶ 31–32.)

### B. 2018 Arrest

Detectives Jenkens and Jeannot continued the investigation, visiting additional doctors, individuals, and pharmacies connected to the prescriptions uncovered in the search. (*Id.* ¶¶ 35–42.) Plaintiff was arrested again in December 2018.[3] Officers did not read Plaintiff his Miranda rights during or after the arrest. (D.E. 103 at 3.) Following the arrest, Plaintiff was transported to the Essex County Correctional Facility and held overnight. (Defs.' Statement ¶ 45.)

On November 8, 2019, Plaintiff pled guilty. According to Defendants, he pled to a single amended charge of possession of a prescription drug legend. (*Id.* ¶ 46.) Plaintiff, however, asserts that he pled guilty "under mental duress to an amended charge of disorderly person at the advisement of [his] Public Defender." (Pl.'s Statement ¶ 46.) Neither side claims that the conviction has been reversed, expunged, or otherwise invalidated.

## II. PROCEDURAL HISTORY

On November 14, 2019, Plaintiff filed the first complaint. (D.E. 1.) He listed himself, Briana Banks, and SG as plaintiffs, and the Irvington Police Department, Detective Brechner Jeannot, and 100 John Does as defendants. (*Id.* at 1.) The complaint included facts related to only the search and arrest that occurred in 2016. (*Id.* at 3–4.)

With the complaint, Plaintiff also filed a motion for appointment of *pro bono* counsel. (D.E. 1-4.) Evaluating that motion required assessing whether Plaintiff's claim had "some merit

---

[3] The litigants' statements provide that this arrest occurred on December 8, 2018 (Defs.' Statement ¶ 44; Pl.'s Statement ¶ 44). Plaintiff's opposition brief and the record indicate that it occurred on December 6, 2018. (D.E. 99-4 at 41 (Tr. 101:7–19), 156; D.E. 104 at 3). Whether the arrest occurred on December 6 or December 8, 2018 is immaterial to the outcome of this MSJ.

in fact and law." (D.E. 2 at 2 (citing *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997)).) Making that assessment, the Court noted the two-year statute of limitations for § 1983 actions in New Jersey. (*Id.* (citing *Backof v. N.J. State Police*, 92 F. App'x 852, 855 (3d Cir. 2004)).) Absent some basis for a later accrual date or equitable tolling, the opinion noted, the limitations period for the 2016 arrest expired in 2018. (*Id.* (citing *Brown v. Elmwood Park Police Dep't*, Civ. No. 19-9565, 2019 WL 2142768, at *2 (D.N.J. May 16, 2019)).) The motion for the appointment of *pro bono* counsel was denied, while Plaintiff was granted leave to amend the complaint. (*Id.*)

On December 20, 2019, Plaintiff amended the complaint. He listed himself and "S[G] et al" as plaintiffs and added Detectives Molina and Jenkens as defendants. (Am. Compl. at 1–2.) The amended complaint alleges facts from 2016 and 2018. (*Id.* at 3–4). In the amended complaint, Plaintiff asserts that the 2018 arrest violated his Third through Tenth Amendment rights and requests $10,000,000 in damages. (*Id.* at 2–4.)[4]

On July 12, 2021, Plaintiff filed another motion for appointment of *pro bono* counsel. (D.E. 10.) Then-Magistrate Judge Edward S. Kiel denied that motion on August 17, 2021. (D.E. 11.) Judge Kiel was unable to determine that the amended complaint had "arguable merit in fact and law." (*Id.* at 4 (citing *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993)).) The amended complaint did not resolve the original complaint's deficiency of detail. (*Id.* at 4–5.) Instead, it "merely allude[d] to another incident involving Green's arrest in … 2018, and name[d] two new defendants." (*Id.*)

Defendants answered the amended complaint on December 2, 2022. (D.E. 34.) On December 12, 2022, Plaintiff filed a third motion for appointment of *pro bono* counsel. (D.E. 35.)

---

[4] Plaintiff later further amended the complaint. (D.E. 6.) Because he did so neither as of right nor with leave from the Court, the Court struck the second amended complaint. (*See* D.E. 11 at 6.) The first amended complaint remains the operative complaint.

Magistrate Judge José R. Almonte denied that motion, finding that Plaintiff's claims had not changed since Judge Kiel found them insufficiently meritorious for the appointment of *pro bono* counsel, and that Plaintiff failed to identify any circumstances warranting reconsideration of Judge Kiel's decision. (D.E. 49.)

On January 5, 2023, the parties appeared for an initial pretrial conference before Judge Almonte and discovery began. (D.E. 40.) At a January 25, 2024 settlement conference, with discovery ongoing, the parties were unable to come to a resolution. (D.E. 89.) On March 26, 2024, Defendants filed this MSJ. (D.E. 99.) The next day, Plaintiff filed a letter insisting that Defendants had not complied with discovery requests. (D.E. 100.) He requested sanctions and that the Court strike the MSJ. (*Id.*) Defendants opposed. (D.E. 101.) Judge Almonte denied Plaintiff's request because it "failed to articulate how Defendants ha[d] violated discovery." (D.E. 102.) The parties timely filed opposition and reply briefs for the MSJ. (D.E. 104; D.E. 109.)

### III.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of summary judgment if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

5

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this initial burden, the burden then shifts to the nonmovant who "must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which … [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. In considering a motion for summary judgment, this Court may not make credibility determinations or weigh the evidence; instead, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255).

## IV.   DISCUSSION

### A.   Briana Banks and SG's Claims

As an initial matter, Plaintiff is proceeding *pro se* and does not claim to be an attorney, so he can represent only himself. It is well established that "[*p*]*ro se* plaintiffs are generally prohibited 'from pursuing claims on behalf of others in a representative capacity.'" *Liggon-Redding v. Willingboro Twp.*, 351 F. App'x 674, 679 (3d Cir. 2009) (per curiam) (quoting *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008)). Rule 11 requires every pleading to "be signed by at least one attorney of record … or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a); *see also Gary v. Albino*, Civ. No. 10-886, 2010 WL 2546037, at *4 n.4 (D.N.J. June 21,

2010) (where *pro se* filing lacked signatures, the court had "no means of establishing" that either non-signing party had "any claims or experienced any circumstances similar to those" of the signing plaintiff).

Ms. Banks and SG have not signed any complaint in this matter. Mr. Green's *pro se* filing cannot be treated as a *pro se* filing on their behalf. *Stephens v. Lanigan*, Civ. No. 18-16559, 2019 WL 1384975, at *3 (D.N.J. Mar. 27, 2019) (dismissing complaint where plaintiff had not "signed the Amended Complaint"). Therefore, this Court will *sua sponte* dismiss all claims raised by Ms. Banks and SG. *Thompson v. Howard*, Civ. No. 09-1416, 2009 WL 3878258, at *1–2 (W.D. Pa. Nov. 18, 2009). In any event, it does not appear that Ms. Banks or SG has any actionable claims or injuries arising from the events alleged in the amended complaint.

### B. Plaintiff's Claims

Plaintiff's claims arise under 42 U.S.C § 1983, which provides a cause of action to plaintiffs "alleg[ing] the violation of a right secured by the Constitution and laws of the United States … by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff alleges that Defendants violated his constitutional rights during the search of his apartment and his arrests. (Am. Compl. 2–4.)

### i. The 2016 Search and Arrest[5]

The statute of limitations for § 1983 actions in New Jersey is two years. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). A claim accrues, meaning the limitations period begins to run, "when the plaintiff knows or has reason to know of the injury which is the basis of the

---

[5] Plaintiff states in his opposition that "the claims contained in the Amended Complaint arise only out of the 2018 Arrest and not the 2016 Arrest." (D.E. 104 at 4.) The amended complaint nonetheless contains facts from 2016 and seems to seek remedies for perceived constitutional violations from the 2016 events (Am. Compl. at 2, 4), so the Court will address them.

section 1983 action." *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (quoting *Genty v. Resol. Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (quoting 1 C. Corman, *Limitation of Actions* § 7.4.1 at 526–27 (1991)).

Plaintiff alleges that the search and his first arrest violated his constitutional rights. Those events occurred on February 6, 2016. Plaintiff was present for and knew of the search and his arrest, and his alleged constitutional injuries, on that day. Accordingly, the statute of limitations for § 1983 actions connected to those events began to run on February 6, 2016.

Plaintiff seems to argue for a later accrual date. His opposition brief states that "[t]he statute of limitations with respect to the date that the court excepted [sic] my amended complaint on December 20, 2019, was within the law since the first criminal indictment was dismissed on April 23, 2018." (D.E. 104 at 4.) The statute of limitations began to run the day Plaintiff knew of the injury, not the day the first indictment was dismissed.[6] *See Wallace*, 549 U.S. at 393 (holding that statute of limitations continues to run despite "*anticipated future conviction*").

The limitations period for the 2016 search and arrest expired on February 6, 2018. Plaintiff filed his first complaint over a year later, on November 14, 2019. (D.E. 1.) Because Plaintiff failed to file a complaint regarding the 2016 search and arrest within the statute of limitations, the MSJ must be granted with respect to those claims.

    ii.    **The 2018 Arrest**

---

[6] Plaintiff also states that this Court "informed [him] on April 24, 2017, that [he] would not be able to file a civil complaint/lawsuit until the completion of the criminal matter." (D.E. 104 at 4.) The Court understands this to refer to another case filed by Plaintiff, Civil Action No. 16-9435 (SDW) (LDW). The comment Plaintiff refers to would apply to a malicious prosecution claim. Plaintiff mentions malicious prosecution in his opposition brief, but as explained below, he fails to establish the requirements of the claim. (*See infra* n.8.) In any event, nothing about the prior case changes the fact that Plaintiff knew of alleged constitutional injuries on February 6, 2016, and that the statute of limitations accrued that day.

Plaintiff's remaining claims, arising from the 2018 arrest, are timely under the statute of limitations. They fail, however, on one of § 1983's core requirements—establishing a violation of Plaintiff's rights secured by the Constitution or laws of the United States. *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011) ("[A] § 1983 plaintiff [must] prove … (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States."). The Court construes the amended complaint as alleging two constitutional violations—false arrest and law enforcement's failure to read Plaintiff the Miranda rights. For the reasons outlined below, neither claim can survive summary judgment.

### a. False Arrest

False arrest is a species of false imprisonment and a violation of the Fourth Amendment. *Wallace*, 549 U.S. at 386, 388–89. To state a Fourth Amendment claim for false arrest, a plaintiff must allege that he or she was arrested without probable cause. *Tarr v. City of Pittsburgh*, 800 F. App'x 131, 133 (3d Cir. 2020) (per curiam). The Third Circuit has concluded "that a guilty plea— *even one for a lesser offense*—does not permit a later assertion of no probable cause." *Walker v. Clearfield Cnty. Dist. Att'y*, 413 F. App'x 481, 483 (3d Cir. 2011) (emphasis added) (finding that guilty plea in "the underlying criminal case" established probable cause). A guilty plea in the underlying case therefore forecloses any possibility of success on a false arrest claim.

Moreover, a § 1983 claim is not cognizable if its success would "necessarily imply the invalidity" of an underlying conviction or sentence that has not been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487, 489 (1994). This has become known as the "*Heck* bar." It prevents a § 1983 plaintiff

9

from pursuing a collateral attack on the validity of his or her conviction or sentence. *See id.* at 484–86.

Here, Plaintiff's 2018 arrest led to a guilty plea.[7] Plaintiff will therefore be unable to show the absence of probable cause, a necessary element of his false arrest claim. Asserting that his arrest was made without probable cause also necessarily denies the validity of the evidence that led to his guilty plea and is barred by *Heck*. *See Walker*, 413 F. App'x at 484. Accordingly, the MSJ must be granted as to the false arrest claim.[8]

### b. Miranda Rights

Plaintiff is also unable to establish that the arresting officers' failure to read him the Miranda rights during the 2018 arrest amounts to a constitutional violation. Under the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), communicating the Miranda rights to a defendant is a "procedural safeguard[]" required before the government may use "statements … stemming from custodial interrogation of the defendant." *Id.* at 444. The officers' failure to

---

[7] The parties dispute the charge that Plaintiff pled to and was convicted of, but the precise nature of the charge is immaterial. Whether it was "possession of a prescription drug legend" (Defs.' Statement ¶ 46), or "disorderly person" (Pl.'s Statement ¶ 46), the material fact—that plaintiff pled guilty in the underlying case—is undisputed.

It is also of no moment that Plaintiff claims to have pled "under mental duress." (*Id.* ¶ 46.) Plaintiff does not allege, as required under *Heck*, that the conviction was "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." 512 U.S. at 489. The material, undisputed fact is that Plaintiff pled guilty and was convicted. Even if the existence of duress were material, Plaintiff offers no evidence to support it. He cites only the portion of his plea agreement indicating that he understood he waived his right to appeal the denial of all pretrial motions except for a motion to dismiss. (D.E. 103-8 at 1.) That is insufficient to establish a genuine dispute because it does not suggest duress at all; no reasonable jury would conclude that Plaintiff pled under mental duress based on his plea agreement alone.

[8] To the extent that Plaintiff sought to bring a malicious prosecution claim (D.E. 104 at 11), it fails for the same reason. Claimants alleging malicious prosecution must also establish that "defendants initiated criminal proceedings without probable cause … and that these proceedings terminated in [claimants'] favor." *See Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014). For the reasons outlined above, Plaintiff cannot establish that he was arrested without probable cause, nor has he shown that the underlying case ended in his favor. He is therefore unable to establish necessary elements of malicious prosecution.

read the *Miranda* rights during the 2018 arrest would lead to a constitutional violation only if, while he was in custody, Plaintiff made a statement that was then used against him at trial. *See Renda v. King*, 347 F.3d 550, 557–58 (3d Cir. 2003) (citing *Chavez v. Martinez*, 538 U.S. 760 (2003)) ("[Q]uestioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial."). Neither side offers evidence of such a statement. Plaintiff has therefore failed to establish a constitutional violation.

Because no facts in dispute here would establish any constitutional violations under § 1983, the MSJ must be granted as to claims against the individual detectives. As there was no constitutional injury, there can also be no municipal liability. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Accordingly, the MSJ must also be granted as to claims against the Irvington Police Department.

Finally, discovery is complete and Plaintiff has not identified the fictitious defendants. *See Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250–51 (3d Cir. 2009) ("If reasonable discovery does not unveil the proper identities, … the John Doe defendants must be dismissed."). Therefore, all claims against the fictitious defendants must be dismissed.

### V.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is **GRANTED**. An appropriate order follows.

　　　　　　　　　　　　　　　　　　　　　　　　/s/ Susan D. Wigenton
　　　　　　　　　　　　　　　　　　　　　　**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
　　　Parties